IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES E. FARMER,
     Petitioner,

vs.                         Case No.:  3:09cv529/MCR/EMT

KENNETH S. TUCKER,[1]
     Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 24, 25).  Petitioner filed a reply (doc. 29).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 25).[2]  Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, with two counts of aggravated assault by threat with a firearm (Counts 1 and 2),

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 24, 25).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

one count of aggravated battery and actually possessing a firearm (Count 3), one count of resisting an officer with violence (Count 4), and one count of failure to appear (Count 5) (Ex. A at 26–27). Following a jury trial, he was found guilty on January 10, 2008, of two counts of aggravated assault by threat with a firearm and one count of battery (*id.* at 24–25). On March 13, 2008, Petitioner entered a written plea agreement and sentence recommendation, which included the following terms: (1) the jury's verdict, which would require a twenty-year minimum mandatory sentence on each of Counts 1 and 2, would be set aside based upon a reversible error that occurred during jury selection,[3] (2) Petitioner would plead guilty to two counts of aggravated assault by threat and one count of battery, (3) Petitioner would be adjudicated guilty on those three counts, (4) Petitioner would be sentenced to five years of imprisonment on Count 1, a consecutive term of five years of imprisonment on Count 2, and one year in county jail on Count 3, to run concurrently with the sentence on Count 2, (5) the facts presented in the arrest report or probable cause affidavit, and presented at trial provided a sufficient factual basis for the plea, (6) Petitioner waived his rights to appeal the trial proceedings and waived those rights appearing in the plea agreement, including but not limited to, the right to plead not guilty, the right to jury trial, the right to appeal all matters, including the issue of guilt or innocence, and the right to request a modification of his sentence absent a substantial change in circumstances occurring after sentencing (*id.* at 58–61). At a hearing on March 13, 2008, the State announced the terms of the plea agreement and clarified its position that absent the plea agreement, Petitioner's maximum sentence exposure was forty (40) years in prison (two consecutive 20-year terms on the aggravated assault charges) plus one year in county jail (*id.* at 30–32). A colloquy with Petitioner was conducted, following which the court accepted the plea and sentenced him in accordance with the plea agreement (*id.* at 38–52). Petitioner did not appeal the judgment.

On May 15, 2008, Petitioner filed a motion to correct illegal sentence, alleging the sentences on Counts 1 and 2 should have been concurrent instead of consecutive (Ex. B at 1–3). The state circuit court dismissed the motion on June 2, 2008 (*id*. at 4–5).

---

[3] The trial court refused to permit the defense to "back strike" a prospective juror, that is, exercise a peremptory or "for cause" challenge after panel selection but before the jury was sworn. *See* Gilliam v. State, 514 So. 2d 1098 (Fla. 1987).

On July 10, 2008, Petitioner filed a motion to compel production of documents or for discovery (Ex. B ta 6–8).  The state circuit court denied the motion on August 25, 2008 (*id.* at 12–13).

On August 11, 2008, Petitioner filed a motion for pre-sentence jail credit (Ex. B at 9–11).  The state circuit court denied the motion on October 3, 2008 (*id.* at 29–34).

On September 4, 2008, Petitioner filed a motion for correction, reduction, or modification of sentence, pursuant to Rule 3.800(b) of the Florida Rules of Criminal Procedure (Ex. B at 14–16).  He filed an identical motion under Rule 3.800(a) on September 12, 2008 (*id.* at 17–19).  On October 3, 2008, the state court dismissed both motions (*id.* at 20–28).

On November 4, 2008, Petitioner filed a motion to correct illegal sentence seeking credit for pre-sentence jail time (Ex. B at 35–38).  The state circuit court denied the motion on November 26, 2008 (*id.* at 39–45).  Petitioner appealed the decision to the Florida First District Court of Appeal ("First DCA") Case No. 1D08-6354 (*id.* at 46–47).  The First DCA affirmed the decision per curiam without written opinion on May 29, 2009, with the mandate issuing July 27, 2009 (Ex. D).  Farmer v. State, 18 So. 3d 1040 (Fla. 1st DCA 2009) (Table).

On January 12, 2009, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D09-206, seeking a belated direct appeal of the judgment of conviction and sentence (Ex. E).  The First DCA dismissed the petition on March 20, 2009, for Petitioner's failure to file an appendix (Exs. F, G).

On February 17, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. C at 51–62).  The state circuit court dismissed the motion without prejudice on April 21, 2009, for Petitioner's failure to comply with the pleading requirements of Rule 3.850 (*id.* at 63–64).  On April 30, 2009, Petitioner filed an amended Rule 3.850 motion (Ex. A at 1–12).  The state circuit court summarily denied the motion (*id.* at 13–62).  Petitioner appealed the decision to the First DCA, Case No. 1D09-3860 (*id.* at 63).  The First DCA affirmed the decision per curiam without written opinion on October 30, 2009, with the mandate issuing November 25, 2009 (*id.*).  Farmer v. State, 21 So. 3d 815 (Fla. 1st DCA 2009) (Table).

On August 10, 2009, Petitioner filed another petition for writ of habeas corpus in the First DCA, Case No. 1D09-3995, again seeking a belated direct appeal of the judgment of conviction and

sentence (Ex. I at 1–14). The First DCA denied the petition on the merits on August 27, 2009, and denied Petitioner's motion for rehearing on October 15, 2009 (Exs. J, K, L). <u>Farmer v. State</u>, 14 So. 3d 1006 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on November 30, 2009 (doc. 1). Respondent concedes the habeas petition is timely (doc. 24 at 6–8).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

---

[4] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."

Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.

*See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the

petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court

---

[5]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair

---

[6] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[7]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).

---

[7] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or

unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[8] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether

---

[8] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.    Ground One:  "The trial court committed fundamental error when it proceeded to set aside the jury verdict on motion by the state, therefore violating due process fundamentals, constitutional provision and Petitioner's right in interest [sic] to the outcome of the judicial process."

Petitioner alleges the trial court lacked jurisdiction to set aside the jury's verdict; therefore, the court violated his Fourteenth Amendment right by doing so (doc. 1 at 9, 17–23).

Respondent contends Petitioner failed to exhaust this claim, because he failed to appeal the judgment of conviction and sentence (doc. 24 at 10).  Respondent further contends the jurisdictional issue is not subject to federal habeas review, because it is purely a state law issue despite Petitioner's characterizing it as a violation of his federal due process rights (*id.*).  Additionally, Respondent argues Petitioner knowingly and voluntarily agreed that the verdict would be set aside (*id.*).

The state court record demonstrates Petitioner did not file a direct appeal of the judgment of conviction and sentence, nor did he raise this claim of trial court error in either of his Rule 3.850 motions.  The undersigned therefore concludes Petitioner did not properly present his federal due process claim to the state courts.  Furthermore, any future attempt to exhaust state remedies would be futile under Florida law, because Petitioner may not take a second appeal of his conviction.  Moreover, any attempt to raise the claim in a successive Rule 3.850 motion would be properly subject to dismissal under Rule 3.850(c) or (f).  Therefore, Ground One is procedurally defaulted for federal habeas purposes.  *See* Bailey, 172 F.3d at 1303.

As previously noted, a procedural default may be excused through a showing of cause for the default and prejudice arising therefrom, *see* Coleman, 501 U.S. at 750, or a demonstration that failure to consider the claim will result in a "fundamental miscarriage of justice," *see* Murray, 477 U.S. at 495–96.  In the instant case, Petitioner appears to allege ineffective assistance of counsel as cause for the procedural default (doc. 1 at 15–16, 21, 26–29).  He states he wanted to appeal the

conviction and sentence and communicated this to defense counsel in two letters "[a]lthough not formally articulated or inclusive of legal jargon" (*id.*).

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), the Supreme Court held that standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984) is to be applied in evaluating a claim that counsel was constitutionally ineffective for failing to file a notice of appeal.  With respect to the first prong of Strickland—whether counsel's representation fell below an objective standard of reasonableness—the Supreme Court reaffirmed that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Flores-Ortega, 528 U.S. at 477.  The court went on to discuss the situation where the defendant does not make a specific request or instruction to file a notice of appeal:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.  We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.  If counsel has consulted with the defendant, the question of deficient performance is easily answered:  Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *See supra*, at 1034 and this page.  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.  That question lies at the heart of this case:  Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

Flores-Ortega, 528 U.S. at 478.

The Court rejected a bright-line rule that counsel must always consult with the defendant regarding an appeal.  *Id.* at 480.  Instead, the Court held:

> . . . counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all the information counsel knew or should have known.  *See* [Strickland, 466 U.S.]

at 690, 104 S.Ct. 2052 (focusing on the totality of the circumstances).  Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.  Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 480.

As to the prejudice prong, the Supreme Court held that to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, he would have timely appealed.  *See* <u>Flores-Ortega</u>, 528 U.S. at 484–86.

In the instant case, the documents upon which Petitioner relies as evidence that he instructed defense counsel, Tony Henderson, to file an appeal do not support his assertion.  Rather, they show only that Petitioner requested that Mr. Henderson consult with him regarding seeking a reduction or modification of his sentence under Rule 3.800, on the grounds that the consecutive sentences were "extreme for my background" (doc. 1 at 26–29).  Therefore, Petitioner failed to show that he instructed counsel to file a direct appeal.

Additionally, defense counsel did not perform deficiently by failing to consult with Petitioner about an appeal.  Petitioner's conviction followed a guilty plea.  Petitioner received the sentence bargained for as part of the plea (*see* Ex. A at 28–52, 58–61).  Additionally, the written plea agreement and sentence recommendation, which Petitioner signed, expressly waived his right to appeal "all matters," including the issue of guilt or innocence, and waived his right to request a modification of his sentence within the limits of the sentence recommendation absent a substantial change in circumstances occurring after sentencing (*id.* at 58–61).  The transcript of the plea and sentencing hearing includes Petitioner's express acknowledgment that he bargained for consecutive sentences totaling ten years, and he understood that the ten-year sentence was a legal sentence (*id.* at 41–43).  Moreover, the record demonstrates that Petitioner entered the plea agreement, which

called for a ten-year total sentence, after a jury had convicted him of crimes for which he could have been sentenced to forty years in prison, had he been re-tried.  In light of the record, Petitioner failed to show that a rational defendant would have desired an appeal in circumstances such as his, or that he sufficiently demonstrated to counsel an interest in an appeal.  Consequently, he failed to demonstrate ineffective assistance of counsel as cause for his failure to exhaust the federal due process claim asserted in Ground One.

Moreover, Petitioner has not alleged the existence of new reliable evidence demonstrating he is actually innocent (that is, factually innocent) of the charges.  Therefore, he has failed to show that this court's failure to review his claim will result in a fundamental miscarriage of justice.  *See* Schlup, 513 U.S. at 327.  For these reasons, Petitioner is not entitled to federal review of Ground One.

B.     Ground Two:  "The trial court committed fundamental error in an abuse of discretion when court [sic] proceeded to deny the defense's motion to back-strike a juror that was cause to declare the proceeding as a mistrial."

Petitioner contends the trial court violated his Sixth and Fourteenth Amendment rights by failing to allow the defense an opportunity to "back strike" a prospective juror during jury selection at his trial (doc. 1 at 10, 17–23).

Respondent contends Petitioner failed to exhaust this claim in the state courts (doc. 24 at 10–11).  Respondent further contends the court's failure to allow the "back strike" involved a state procedural issue, not a federal constitutional error (*id.*).  Additionally, Respondent argues the alleged error did not prejudice Petitioner, because the jury verdict was vacated and the trial rendered a nullity (*id.*).

As with Petitioner's previous claim, the undersigned concludes Petitioner did not properly present a federal claim to the state courts, because he failed to raise it on direct appeal of his conviction, which was the proper procedural vehicle for doing so.  Additionally, he failed to show he is entitled to federal review under the "cause and prejudice" exception or any other recognized exception to the procedural bar.

Notwithstanding Petitioner's failure to exhaust, he is not entitled to relief.  The jury's verdict (finding him guilty as charged on Counts 1 and 2, and guilty of a lesser included offense on Count

3) was set aside, and Petitioner knowingly and voluntarily pleaded guilty to reduced charges on those counts. Therefore, the trial court's error during jury selection, even if it was constitutional error as opposed to an error of state law, did not result in actual prejudice. *See* Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). Accordingly, Petitioner is not entitled to federal habeas relief.

     C.    <u>Ground Three: "The trial court committed fundamental error when court [sic] overruled objection by defense counsel requesting mistrial concerning a witness that committed a Richardson violation."</u>

Petitioner contends the trial court erred during his jury trial by overruling defense counsel's objection to a <u>Richardson</u> violation (doc. 1 at 10–11, 17–23).[9] Petitioner argues the trial court's alleged error violated his Sixth and Fourteenth Amendment rights (*id.*).

Respondent contends Petitioner failed to exhaust this claim in the state courts (doc. 24 at 11). Respondent additionally contends the alleged error involved a state evidentiary issue, not a federal constitutional error (*id.*).

As with Petitioner's previous claims, the undersigned concludes Petitioner did not properly present a federal claim to the state courts, because he failed to raise this issue on direct appeal of his conviction, which was the proper procedural vehicle for doing so. Additionally, he failed to show he is entitled to federal review under the "cause and prejudice" exception or any other recognized exception to the procedural bar. Moreover, as with Ground Two, any constitutional error that occurred during trial, assuming it was constitutional error as opposed to an error of state law, did not have a substantial and injurious effect on the outcome of the proceedings, since the jury's verdict was set aside and Petitioner's conviction was based upon his knowingly and voluntarily pleading guilty to reduced charges. *See* Brecht, *supra*. Therefore, Petitioner is not entitled to federal habeas relief on Ground Three.

     D.    <u>Ground Four: "Petitioner was denied the effective assistance of counsel."</u>

---

[9] In <u>Richardson v. State</u>, the Florida Supreme Court held that a trial court's discretion to permit testimony of a witness, whose name and address was not furnished to the defense by the State, may properly be exercised only after the court has made an adequate inquiry into whether the State's discovery violation was inadvertent or willful, whether the violation was trivial or substantial, and what effect, if any, the discovery violation had upon the defendant's ability to properly prepare for trial. 246 So. 2d 771, 775 (Fla. 1971)

Petitioner contends defense counsel's lack of trial preparation and inadequate representation during the jury trial effectively coerced him to accept the State's plea offer (doc. 1 at 11, 21–22). He additionally presents two somewhat contradictory arguments regarding defense counsel's advice during the plea process.  First, Petitioner suggests defense counsel erroneously advised him that the plea agreement provided that his sentences would run concurrently (*id.* at 15).  Petitioner then asserts defense counsel "specific[ally] and affirmative[ly]" advised him to accept the plea, and he (defense counsel) would later move the court to run the sentences on Counts 1 and 2 concurrently (which suggests defense counsel did <u>not</u> advise him that the plea agreement provided that the sentences would run concurrently) (*id.* at 15, 20–21).  Petitioner also argues defense counsel erroneously advised him that he faced a potential forty-year sentence if he rejected the plea offer and went to trial a second time (*id.* at 20).

Respondent concedes this claim was exhausted in the state courts (doc. 24 at 11). Respondent contends the written plea agreement and the transcript of the plea and sentencing hearing conclusively show that Petitioner knew he would be sentenced to two consecutive five-year terms, and he knew those sentences were legal (*id.* at 12–13).  Therefore, Petitioner failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 12–15).

        1.      Clearly Established Federal Law

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in <u>Strickland</u>, 466 U.S. at 668, applies.  *See* <u>Hill v. Lockhart</u>, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed.2d 203 (1985).  To obtain relief under <u>Strickland</u>, Petitioner must establish:  (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697; <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances."  *See* <u>Strickland</u>, 466 U.S. at 691.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann v. Richardson</u>, 397 U.S. 759, 769–70, 90 S.Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  <u>Hill</u>, 474 U.S. at 56–57 (quoting <u>McMann</u>, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  <u>Yordan v. Dugger</u>, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advise is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer."  <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the

facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

      To meet the prejudice prong of the <u>Strickland</u> standard in a plea situation, Petitioner must establish that prove that "counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Hill</u>, 474 U.S. at 59. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60. While counsel can be deemed ineffective under <u>Strickland</u> for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *See* <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991). A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under <u>Strickland</u>. *See* <u>Diaz</u>, 930 F.2d at 835; *see also* <u>Coulter v. Herring</u>, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); <u>Johnson v. Duckworth</u>, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

      Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

      2.     Federal Review of State Court Decision

Petitioner raised this claim as Grounds One and Two in his Rule 3.850 motion (Ex. A at 6–9).[10]  The state circuit court adjudicated the claim as follows:

> The Defendant claims that his trial counsel was ineffective for advising him to take the state's plea offer.  Specifically, the Defendant contends that his trial counsel was ineffective for advising him that if he did not take the state's offer of ten years in prison, he would be subject to the imposition of two consecutive twenty year prison terms.   The court finds that trial counsel was not ineffective for recommending the Defendant accept the state's plea offer.

> The Defendant was found guilty, by a jury, of committing two counts of aggravated assault against two different victims where the Defendant possessed and discharged a firearm.  Accordingly, if the Defendant did not accept the State's offer, the Defendant would be subject to two consecutive minimum mandatory terms of twenty years each.  § 775.087, Fla. Stat.

> The Defendant argues that his sentences could not have been structured to run consecutively.  In support of this argument, he claims that his crimes arose out of single [sic] criminal episode.  However, even if the Defendant's crimes arose out of a single criminal episode, he still would have been subject to consecutive sentences. The jury found that the Defendant actually discharged a firearm during the commission of his two crimes, resulting in injury to two distinct victims.  See Valentin v State, 963 So. 2d 317, 320 (Fla. 5th DCA 2007).  As the Florida Supreme Court has explained, "the injury may consist of the heightened danger caused by a fired weapon."  State v. Christian, 692 So. 2d 889, 890 n.1 (Fla. 1997).

> It should also be noted that even if the minimum mandatory sentences could not have been structured to run consecutively, the Defendant still would have been subject to the imposition of a twenty year minimum mandatory prison term. Therefore, it is difficult to imagine how the Defendant's trial counsel could be considered to be "ineffective" for recommending the Defendant accept a plea bargain requiring the Defendant serve [sic] two consecutive five year prison terms in light of the jury's guilty verdict.

> The Defendant asserts that had he rejected the state's plea offer, he would have been free to appeal his conviction to the First District Court of Appeal due to a purported discovery violation.  Even if Defendant had rejected the state's plea offer and subsequently succeeded on appeal, however, he simply would have been granted a new trial.  Considering the jury's verdict, it would not be unreasonable for trial

---

[10] In Ground Three of Petitioner's Rule 3.850 motion, he argued defense counsel was ineffective for failing to file a motion to withdraw his plea, which would have preserved his right to appeal his conviction (*see* Ex. A at 10–11). Petitioner did not raise that claim in his federal habeas petition.

counsel to advise the Defendant to avoid the distinct possibility of prevailing on appeal only to be found guilty a second time and once again be faced with the possibility of two, consecutive, twenty year prison terms.  There could be no guarantee that such a lenient plea offer would be extended by the state a second time.

For the Defendant's ineffective assistance of counsel claims to be successful, he must prove that that [sic] his counsel's performance was unreasonable under the "prevailing professional norms."  The court finds that Defendant's trial counsel advising the Defendant to accept the state's plea offer was not unreasonable under the prevailing professional norms.  Accordingly, the court finds that this claim should be denied.

. . . .

The Defendant claims that he was hesitant to accept the plea because the terms "should have been ran concurrent."  He further alleges that he accepted the state's plea offer based on trial counsel's promise to "fix" the plea agreement later.  Specifically, the Defendant asserts that he was promised by his counsel that counsel would "file the appropriate paperwork to have the terms run concurrent instead of consecutive."

However, at sentencing, defense counsel specifically and thoroughly inquired if the Defendant understood the sentence he would be receiving.  The following exchange took place on the record:

> Mr. Henderson:       And the only appellate right that you would still possess is to appeal the legality of the sentence.  Do you understand that?
>
> The Defendant:       I do.
>
> Mr. Henderson:       And as the sentence is structured, there's a third degree felony which carries a maximum of five years a piece[sic].  Do you understand that?
>
> The Defendant:       I do.
>
> Mr. Henderson:       Would which [sic] subject you to ten years, so by the Court sentencing you to ten years, that that is a legal sentence.  Do you understand that?
>
> The Defendant:       I do.

        Mr. Henderson:        So in the essence of the matter you will be giving up all appellate rights because the sentence would be legal. Do you understand that?

        The Defendant:        I do.

Subsequently, the following exchange took place on the record:

        Mr. Henderson:        . . . Judge, if I could do one more thing for the record, do you understand that as to the sentencing, the way you were convicted at trial, that the Court could impose the twenty year minimum mandatory or run two twenty year minimum mandatory consecutive for a total of forty years; do you understand that?

        The Defendant:        Yes.

Therefore, the record demonstrates that the Defendant understood he was being sentence to two, *consecutive*, five year prison terms, that his counsel advised him that this was a legal sentence, and that if he did not accept the plea offer, the Defendant would face the possibility of 40 years in prison.

In addition, the court would note that, at the time he accepted the state's plea offer, he had already been convicted by a jury. Therefore, the Defendant cannot show how he was prejudiced by such alleged improper promise to "fix" the plea agreement in the future. If the Defendant had rejected the plea offer, he would have been sentenced to twenty or forty years in prison.

In other words, in light of the jury's guilty verdict, the Defendant was in no position to reject the plea offer and proceed to trial; his guilt had been legally established. If the Defendant had rejected the State's plea offer, it is, of course, undisputed that the Defendant could have sought appellate review of the trial proceedings. At the time the Defendant was deciding whether to reject or accept the state's plea offer, however, the Defendant's trial proceedings were presumptively valid and would have remained valid unless and until an appellate court determined otherwise.

Accordingly, under the facts of this case, the Defendant was not prejudiced by any alleged improper promise to "fix" the plea agreement in the future. If the Defendant had rejected the plea offer, as plainly demonstrated by the record, he would have certainly received a sentence at least twice as long, if not four times as long, as the one he received.

The Defendant asserts that "but for counsel's unprofessional errors, the defendant would not have accepted the plea agreement but would have accepted the jury's verdict and appealed the jury's verdict instead."  The Defendant appears to miss the point.  An appeal is not a second trial.  The Defendant's claim that he was prejudiced by being the [sic] denied the possibility of prevailing on appeal, which may have led to the Defendant possibly being granted a new trial, and that these possible new trial proceedings might have somehow led to a different outcome for the Defendant is simply too attenuated and speculative to warrant relief.  In other words, there is no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  As the Florida Supreme Court has made clear, where a defendant alleges ineffective assistance of trial counsel the "proceeding" at issue is the trial.  Carratelli v. State, 961 So. 2d 312 (Fla. 2007).  In light of the jury's verdict, it is hard to imagine a scenario where the Defendant's consideration of whether his five year sentences were concurrent or consecutive would have had any impact on his decision whether to plead guilty; he was already found to be guilty after trial.

As previously noted, the record demonstrates that the Defendant was advised by his counsel on the record that this sentence was a legal sentence.  In addition, the record conclusively shows that the Defendant was repeatedly and specifically made aware that his two five year sentences were to be served consecutively.  The Defendant's signed plea agreement reflects that the Defendant was not compelled or induced by his counsel to agree to the sentence recommendation by any force, duress, threats, pressure, or promises.  As the Fourth District Court of Appeal has explained, "[a] plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case.  What is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782 (Fla. 4th DCA 2007).

. . . .

The court finds that the record reflects that the Defendant entered his plea voluntarily and freely.  Accordingly, the Defendant's claim that his plea was involuntary is refuted by the record.

(doc. 37, Supplement; doc. 24, Ex. A at 14–22 (footnotes omitted)).

Petitioner appealed the state circuit court's decision to the First DCA.  The appellate court affirmed per curiam without written opinion.

Initially, the state court applied the correct legal standard to Petitioner's claim.  The court assessed (1) whether defense counsel's performance was unreasonable under the prevailing professional norms, and (2) whether Petitioner demonstrated a reasonable probability that counsel's alleged error impacted his decision to plead guilty.  This is the Strickland standard.  Therefore,

Petitioner failed to demonstrate he is entitled to relief under the "contrary to" provision of the AEDPA.

Additionally, the state court's factual findings concerning the results of Petitioner's trial, the terms of the written plea agreement, and the on-the-record exchange between Petitioner and defense counsel during the plea and sentencing hearing, are supported by the record.  Therefore, those findings are entitled to deference.

Deference is also due to the state court's findings on matters of state law.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Therefore, this court is bound by the state court's determination that (1) if Petitioner did not accept the State's offer and was re-tried, he would be subject to two consecutive minimum mandatory terms of twenty years in prison, (2) even if his crimes arose out of a single criminal episode, he still would have been subject to consecutive sentences, (3) even if the minimum mandatory sentences could not have been structured to run consecutively, Petitioner still would have been subject to the imposition of a twenty-year minimum mandatory prison term, and (4) Petitioner's consecutive five-year sentences constituted a legal sentence under Florida law.

The only remaining issue is whether Petitioner is entitled to relief under the "unreasonable application" prong of § 2254(d)(1).  As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, 633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In light of the state court's factual findings and determinations of state law, the state court reasonably concluded that Petitioner failed to demonstrate deficient performance by counsel or prejudice. It was reasonable for defense counsel to advise Petitioner to avoid the distinct possibility of prevailing on appeal only to be found guilty a second time and once again be faced with the possibility of two consecutive twenty-year prison terms. This is especially true since there was no guarantee that the State would extend such a lenient plea offer a second time. Additionally, the record supports the state court's conclusion that Petitioner fully understood the terms of the plea agreement, including the fact that he would be sentenced to two consecutive five-year terms. At the plea and sentencing hearing, defense counsel specifically and thoroughly inquired of Petitioner whether he understood he would be sentenced to two five-year terms totaling ten years, and Petitioner unequivocally stated he understood (Ex. A at 28–53). Counsel also correctly advised Petitioner that this was a legal sentence, and that if he did not accept the plea offer he would face the possibility of forty years in prison, and Petitioner again unequivocally stated he understood this (*id.*). Additionally, Petitioner signed the written plea agreement, which expressly stated he would be sentenced to a total of ten years in state prison (*id.* at 58–61). Further, by signing the agreement, Petitioner certified that he understood all the terms, conditions, and rights of the agreement, including the sentence recommendation of a total of ten years in prison (*id.*). Petitioner also certified that his counsel did not induce him to enter the plea by any force, duress, threats, pressure, or promises (*id.*). Based upon the record, the state court's denial of Petitioner's ineffective assistance of counsel claims was not an unreasonable application of <u>Strickland</u>.

V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L.

Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.


At Pensacola, Florida, this 16<u>th</u> day of December 2011.



<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).